UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES LEE GRADY | CIVIL ACTION |
| VERSUS | NO. 22-1043 |
| BP EXPLORATION & PRODUCTION, INC., ET AL. | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court are plaintiff Charles Grady's motions to continue trial and pre-trial deadlines and defer briefing on defendants BP Exploration & Production, Inc. and BP America Production Company's motion for summary judgment.[1] The motions are opposed.[2] Also before the Court is defendants' opposed motion for summary judgment.[3] For the following reasons, the Court denies plaintiff's motions and grants defendants' motion for summary judgment.

**I.   BACKGROUND**

---

[1]   R. Docs. 18 & 32.
[2]   R. Docs. 19 & 38.
[3]   R. Docs. 31 & 33.

This case arises from plaintiff's alleged exposure to toxic chemicals following the *Deepwater Horizon* oil spill in the Gulf of Mexico. Plaintiff alleges that he was exposed to crude oil, other hydrocarbons, and dispersants from his work as a cleanup worker.[4] Plaintiff represents that this exposure has resulted in allergic rhinitis with chronic sinusitis, and that he has suffered "physical, mental and emotional pain, suffering, and anguish; the need for medical monitoring; costs and inconvenience [associated with] obtaining past and future medical treatment . . . risk and fear of developing future diseases . . . .becoming saddled with financial burden; inconvenience; and emotional strain" as a result of the spill.[5]

This case was filed under the Back End Litigation Option ("BELO") provisions of the Medical Benefits Class Action Settlement Agreement reached in the multidistrict litigation previously pending before Judge Barbier, and is governed by a Case Management Order ("CMO") generally applicable to all BELO suits.[6] On the date of the deadline for his expert disclosures, October 13, 2023, plaintiff filed a motion to continue trial and pre-trial deadlines.[7] In the motion, plaintiff requests a 120-day extension of

---

[4]   R. Doc. 1 ¶¶ 38-45.
[5]   *Id.* ¶¶ 42-44.
[6]   R. Doc. 3.
[7]   R. Doc. 18.

2

all unexpired CMO deadlines to settle ongoing discovery disputes and provide his experts with additional time to assess the quality of the data they have.[8] Defendants oppose the motion, contending that plaintiff has not demonstrated that any of the documents plaintiff intends to seek are relevant to the issue of causation.[9]

Defendants subsequently filed a motion for summary judgment in accordance with the deadlines set out in the CMO, contending that plaintiff has not produced any admissible expert evidence regarding causation.[10] Plaintiff filed a motion to defer consideration of the motion for summary judgment on the basis of the ongoing discovery disputes and the pending motion to continue.[11]

The Court considers the motions below.

## II.  PLAINTIFF'S MOTIONS FOR CONTINUANCE AND DEFERRAL

### A.  MOTION FOR CONTINUANCE

Rule 16(b) of the Federal Rules of Civil Procedure provides that "[a] scheduling order may be modified only for good cause and with the judge's

---

[8] *Id.*
[9] R. Doc. 19.
[10] R. Doc. 31.
[11] R. Doc. 32.

3

consent." Fed. R. Civ. P. 16(b)(4). The "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal citations omitted). Whether to grant or deny a continuance is within the sound discretion of the trial court. *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996). In deciding whether to grant a continuance, the Court's "judgment range is exceedingly wide, for . . . [it] must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (quoting *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549-50 (5th Cir. 2000) (internal quotation marks omitted)). The Court considers four factors in deciding whether a scheduling order should be modified: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015).

      *i. Explanation for Failure to Comply*

The first factor weighs against granting a continuance. Plaintiff explains his inability to comply with the deadlines set forth in the CMO as

4

the result of protracted disputes regarding discovery involving multiple defendants and nonparties across multiple courts.[12] Specifically, plaintiff contends that, due to delays outside of his control, including defendants' improper designation of unprivileged material as privileged, he has been unable to obtain the deposition of the manufacturer of the chemical dispersant COREXIT, ChampionX; review documents that ChampionX has produced; or obtain discovery from a contractor of defendants known as Exponent due to discovery disputes culminating in a motion to compel in the United States District Court for the Northern District of Florida.[13] On October 24, 2023, the Northern District of Florida denied the motion to compel.[14]

Plaintiff represents that he has been diligently seeking the disputed discovery, but has been unable to obtain it because of defendants' and their contractors' delay tactics.[15] But as defendants point out, the toxic tort litigation concerning COREXIT and its role in the *Deepwater Horizon* spill has been ongoing for over a decade, and the presence of these contractors were known since the beginning.[16] The role of COREXIT in the spill was a

---

[12]  R. Doc. 18-1 at 5-11.
[13]  *Id.*
[14]  R. Doc. 22.
[15]  *Id.*
[16]  R. Doc. 19 at 9.

5

major component of the MDL, and COREXIT itself is a proprietary formula containing other chemicals,[17] and whose toxicity can be assessed based on available scientific literature. *See, e.g., In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, No. MDL-2179, 2012 WL 5960192, at *17-18 (E.D. La. Nov. 28, 2012); *see generally* Keirin Ahmad, Deepwater Horizon: Chemical Dispersants and the Future of Oil Spill Response Methodology, 25 Syracuse Sci. & Tech. L. Rep. 28 (2011). Plaintiff has not shown that he has been diligent in seeking information about the toxicity from available sources, and there is nothing to indicate that any expert has even begun to analyze his claims. *See Clark v. BP Expl. & Prod., Inc.*, No. 22-105, 2023 WL 5024998, at *3 (S.D. Miss. Aug. 7, 2023) (declining to reconsider order denying motion for extension of deadlines and noting that plaintiff failed to identify expert and demonstrate progress on analyzing claims). Moreover, plaintiff gives no explanation why he waited until the day of his expert disclosure deadline to raise this issue, and his motion is not supported by an affidavit that discusses the status or substance of the proposed experts' ongoing work, or even the identity of these experts.[18] *See Norton v. BP Expl.*

---

17    *See* R. Docs. 30-1 & 30-2.
18    Plaintiff's motion refers in a footnote to a "Sahu Affidavit," but no such affidavit was filed with the motion. R. Doc. 18-1 at 3 n.6. Additionally, plaintiff refers to a pending deposition of "COREXIT expert Dr. Veena Antony, M.D." referenced in a letter to Judge

6

*& Prod., Inc.*, No. 21-71, 2021 WL 4955198, at *2 (S.D. Miss. Sep. 27, 2021) (denying motion to extend plaintiff's expert disclosure deadline in part because plaintiff submitted his motion on the deadline for disclosure and failed to provide an expert affidavit).

> ii. *Importance of the Modification*

The second factor weighs against granting a continuance. Plaintiff contends that the discovery he seeks from ChampionX will be important for establishing causation, because it will "provide important information regarding the toxicity of, and Plaintiff's exposure to, the chemical dispersant COREXIT – including information regarding COREXIT's potential to increase dermal absorption of harmful chemical[s] found in crude oil."[19] Plaintiff represents that this discovery is also expected to reveal information about plaintiff's level of exposure to COREXIT.[20] But ChampionX is unlikely to be in the best position to provide scientific evidence regarding the epidemiological consequences of COREXIT exposure or empirical evidence of plaintiff's level of exposure. *See In re Deepwater Horizon BELO Cases*,

---

       Morgan in cases *Boggs*, No. 16-13476 and *Hampton*, No. 13-3929, but plaintiff does not state that he seeks to offer Dr. Antony as a causation expert in this case. *Id*. at 15.

[19]     R. Doc. 18 at 6.
[20]     *Id.*

7

No. 19-963, 2023 WL 6067427, at *2 (N.D. Fl. Sep. 14, 2023) ("Despite repeated assertions about what the recently-produced or yet-to-be-produced documents are 'anticipated' to show, [p]laintiff has not shown how any of the third-party documents are important to his expert reports."); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 2012 WL 5960192, at *9 ("[ChampionX] did not decide whether, when, where, how, or in what quantities Corexit was applied in response to the DEEPWATER HORIZON/Macondo Well oil spill."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 77 F. Supp. 3d 500, 507 (E.D. La. 2015) (The federal government – through the Unified Area Command structure – "had the authority to set overall strategy and priorities, allocate critical resources according to priorities, ensure the incident was properly managed, and ensure that objectives were met and strategies followed.").

Plaintiff has the burden of proving that exposure to oil or other chemicals used during the response legally caused his claimed illness. *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *11 (E.D. La. Apr. 1, 2021) (noting that B3 plaintiffs must prove that their alleged personal injuries were "due to exposure to oil or other chemicals used during the oil spill response"). The Fifth Circuit has developed a "two-step process in examining the

8

admissibility of causation evidence in toxic tort cases." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). First, plaintiff must show general causation, which means that he must show that "a substance is capable of causing a particular injury or condition in the general population." *Id.* Second, if the Court concludes that plaintiff has produced admissible evidence on general causation, it must then determine whether plaintiff has shown specific causation, in other words, that "a substance caused [that] particular [plaintiff's] injury." *Id.* If the Court finds that there is no admissible general causation evidence, there is "no need to consider" specific causation. *Id.* (citing *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1329 (10th Cir. 2004)).

The Fifth Circuit has held that epidemiology provides the best evidence of causation in a toxic tort case. *See Brock v. Merrell Dow Pharms., Inc.*, 874 F.2d 307, 311 (5th Cir. 1989). That is not to say that epidemiologic evidence "is a necessary element in all toxic tort cases," but "it is certainly a very important element." *Id.* at 313. As explained by the Fifth Circuit:

> Epidemiology attempts to define a relationship between a disease and a factor suspected of causing it . . . . To define that relationship, the epidemiologist examines the general population, comparing the incidence of the disease among those people exposed to the factor in question to those not exposed. The epidemiologist then uses statistical methods and reasoning to allow her to draw a biological inference between the factor being studied and the disease's etiology.

9

*Id.* at 311.

COREXIT's potential to increase the absorption of other hydrocarbons is not relevant to the issue of general causation with respect to allergic rhinitis and chronic sinusitis, which asks whether the chemical in question can cause a specific pathology in the general population. Additionally, plaintiff contends that the discovery he seeks from ChampionX will likely be relevant to general causation because the Material Data Safety Sheet for COREXIT 9527, one of the dispersants used during the spill, states that it is "[h]armful by inhalation" and that "[r]epeated or prolonged exposure may irritate the respiratory tract."[21] This statement does not tend to show that the discovery plaintiff seeks from ChampionX will be relevant to general causation; it demonstrates only that repeated or prolonged exposure to COREXIT may cause irritation to the respiratory tract. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 462 (5th Cir. 2012) (affirming district court's exclusion of chemical material safety data sheet where it stated that the chemical can be "severely corrosive to the respiratory system" because it did not state that the chemical could cause plaintiff's respiratory conditions). Plaintiff further represents that he anticipates ChampionX's production will

---

[21] R. Doc. 30 at 2.

include "human health studies . . . and toxicity studies on COREXIT."[22] But plaintiff does not explain why his expert reports could not be completed with the voluminous amount of information and documents counsel has had access to for years in these BELO cases. *See Leverette-Rodriguez v. BP Expl. & Prod., Inc.*, No. 22-186, 2023 WL 8295992, at *4 (N.D. Fl. Nov. 22, 2023) (denying motion to defer consideration of summary judgment motion to give plaintiff time to review discovery production in part because plaintiff had not shown why productions were important to complete expert reports). Ultimately, "the law cannot wait for future scientific investigation and research." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Rather, the Court "must resolve cases . . . on the basis of scientific knowledge that is currently available." *Id.* Accordingly, the Court finds that plaintiff has not shown that the discovery he seeks will be important to develop expert causation evidence. *See id.* at *6 (noting that in numerous BELO cases participating in the "umbrella discovery" process, extensions of expert disclosure deadlines "did nothing to help the plaintiffs in those cases meet their causation burden").

Plaintiff next argues that the anticipated discovery will be important because it will demonstrate that defendants intentionally made evidence of

---

22 *Id.* at 2-3.

causation difficult to obtain.[23]  But for the purposes of producing expert causation evidence, this is irrelevant.  This argument has no bearing on whether plaintiff can demonstrate that COREXIT can cause the conditions he complains of in the general population.

        *iii.*    *Potential Prejudice and Availability of a Continuance*

The third factor weighs against granting a continuance.  First, plaintiff waited to file the motion to continue until the date of its deadline to disclose expert reports.  *See Norton*, 2021 WL 4955198, at *3 ("Plaintiff has offered no explanation for not recognizing the need for [more time for] experts much sooner or for waiting until the deadline to file his Motion to [Continue] Expert Deadlines."); *Villarreal v. City of Laredo*, No. 03-11, 2008 WL 2770110, at *3 (S.D. Tex. July 11, 2008) ("While [p]laintiff['s] counsel filed a motion for an extension of time to provide the [expert] report, it is dismaying that [p]laintiff['s] counsel elected to wait until the eleventh hour[-]the day of the deadline-to do so.").  Second, this litigation has been lengthy, expensive, and complicated.  Granting plaintiff a continuance would result in further delay and expense, including a greater burden of discovery and retention of additional experts by defendants to counteract new evidence propounded by

---

[23]    R. Doc. 18 at 13.

12

plaintiff. *See Gibbs v. BP Expl. & Prod., Inc.*, No. 20-204, 2021 WL 2660612, at *2-3 (S.D. Miss. May 19, 2021). The fourth factor also weighs against granting a continuance, since the availability of a continuance would not cure the prejudice of additional expense that defendants would incur. *See Clark*, 2023 WL 5024998, at *3.

Considering the relevant Rule 16 factors, the Court finds that defendants have not established that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)). Thus, plaintiff has failed to meet his burden to establish good cause to modify the scheduling order.

### B. MOTION FOR DEFERRAL

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the nonmovant may seek to defer consideration of a motion for summary judgment. To succeed on a motion under Rule 56(d), the nonmovant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable

time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *MDK Sociedad de Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (quoting *Am. Faimly Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)).

    Here, plaintiff asserts that deferral is appropriate because (1) there are the outstanding discovery issues that formed the basis of his motion to continue, (2) plaintiff has not had time to review discovery that has already been produced, (3) the complexity of the science at issue here, and (4) plaintiffs have been diligent in pursuing discovery.[24] The only issue to be decided on the motion for summary judgment is whether plaintiff can produce admissible expert evidence on the issue of causation.[25] Because the Court has found that plaintiff has not shown good cause for an extension of his expert disclosure deadline, and plaintiff has not produced expert reports, plaintiff cannot produce expert evidence on the issue of general causation. None of plaintiff's contentions demonstrate how a deferral would produce specific facts relevant to deciding the motion for summary judgment "within a reasonable timeframe." *See January v. City*

---

[24]     R. Doc. 32-1 at 4-5.
[25]     R. Doc. 31-2 at 1-2.

*of Huntsville*, 74 F.4th 646, 652 (5th Cir. 2023) ("[Pointing to pending discovery] isn't enough. [Plaintiff's] list of items sought isn't the same as identifying the facts those items will support.").

Additionally, the Court has already found that plaintiff has not established that the discovery he seeks will be important in creating a genuine issue of material fact on summary judgment. The Fifth Circuit has repeatedly "demand[ed] *scientific—i.e., expert—*knowledge of the harmful level of exposure to a chemical' as a minimal fact necessary to sustain the plaintiffs' burden." *Byrd v. BP Eploration & Prod.*, No. 22-30654, 2023 WL 4046280, at *2 (5th Cir. 2023) (quotations and citations omitted) (emphasis in original) (affirming denial of motion to defer consideration of summary judgment motion). "Exposure data . . . from the incident . . . does not bear on whether, per the scientific literature, exposure to a chemical can cause a specific injury in the *general population*." *Id.* (emphasis in original). Plaintiff does not point to any specific facts indicating that the discovery he seeks will help him demonstrate that COREXIT is capable of causing allergic rhinitis or chronic sinusitis in the general population. Thus, the Court finds that plaintiff has not demonstrated that deferring consideration of the motion for summary judgment is warranted.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion,

17

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### B. DISCUSSION

In their motion, defendants contend that they are entitled to summary judgment because plaintiff cannot establish either general or specific causation.[26] Expert testimony is required to establish general causation in toxic-tort cases like this one. *See McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433-34 (5th Cir. 2020) (affirming summary judgment where plaintiff lacked admissible expert testimony on general causation); *see also Macon v. BP Expl. & Prod. Inc.*, No. 17-3548, 2022 WL 1811135, at *7 (E.D. La. June 2, 2022) (dismissing plaintiff's claims "[b]ecause expert testimony is required on [general causation]"). Here, the plaintiff has not offered any expert reports or testimony.

Given that plaintiff cannot prove a necessary element of his claims against defendants, his claims must be dismissed. *See Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *11 (E.D. La. Dec. 5, 2019) ("When a plaintiff has no expert testimony to prove his medical diagnosis or

---

[26]    R. Doc. 31-2 at 1-2, 8.

causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage."); *see also McGill*, 830 F. App'x at 434 (upholding the district court's grant of summary judgment given that the plaintiff did "not put forward any non-speculative evidence that Corexit and oil exposure cause the types of illnesses he suffer[ed] from"). Accordingly, the Court grants defendants' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motions to continue trial and pretrial deadlines and to defer briefing on the motion for summary judgment. The Court GRANTS defendants' motion for summary judgment. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___4th___ day of January, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE